319-0032 Caterpillar Appellant by Andrew Reedy v. Employer Insurance Company of Wausau Academy by Eric McCaul And Mr. Reedy, you may proceed as you're approaching. We just would like to acknowledge that we have received the acknowledgement from the ARDC both of your ability to practice here in Illinois and I believe of the co-counsel's as well under Supreme Court Rule 707. So we just wanted to make sure that was on the record and that you may proceed. Thank you. May it please the Court, Andrew Reedy on behalf of the appellant Caterpillar. I would like to reserve five minutes of my time for rebuttal. Caterpillar is seeking reversal of the trial court's grant of Wausau's motion to compel arbitration. There are two legal issues, whether Wausau waived its right to arbitration by its conduct that was inconsistent with the intent to arbitrate and whether Wausau is time-barred because Wausau failed to comply with the two-year contractual limitations period. The standard for review is de novo under this Court's 2016 case of Watkins v. Mellon. Just a minute or two about background to give context for the arguments. The Caterpillar and Wausau are longtime foes. They have been litigating insurance coverage disputes for three decades literally. The first was clean-up of environmental sites. Then it was asbestos bodily injury claims. And now it's welding fumes claims. And your predecessor and your firm started with litigation. Now you've been doing it for a while. I have been doing it for a while. And now there are different cases. That's right. The environmental insurance coverage dispute involved dozens of sites, and the case was brought by Caterpillar and its subsidiary, Solar, against many insurers who sold insurance coverage for many decades, including Wausau. The case resolved in 1999, and that gave rise to what we're calling in this case the 1999 settlement agreement. Welding fumes were not an issue in that case in any sense of the word, and they're not mentioned in the settlement agreement. And this is even though Wausau had been receiving welding fume claims in the normal notification process for four years prior to the 1999 settlement agreement. So how is it that the settlement agreement can be dissected? It came in 1999, but there were notifications of pending fume cases claims for the previous four years. Right. So isn't it possible that it was—I know there's some confidentiality problems with the 1999 agreement, but isn't it possible that those claims that preceded 1999 were contemplated or rolled into the 1999 settlement agreement? We don't think so, and we think their conduct in this case indicates that's not the case. They're silenced for 12 years. If you have a release you think applies and you're literally getting thousands of complaints in, wouldn't you write a letter, have a phone call, file a motion, do something to say, these have been released, these are gone? That never happened. So in 2011 when Caterpillar first filed this case, they filed a suit against centering another insurer and Wausau to recoup defense costs because Caterpillar successfully defended the welding fumes cases. They were resolved without any liability or any settlement. It was just purely defense costs in this case. Did Caterpillar ever request Wausau or send a demand letter with a duty to defend when this litigation was going on from 1999 to I don't even know what year, 2007 maybe? So we sent plenty of notices to Wausau. Asking them to defend? Asking them to protect Caterpillar's interests. That was the phrase, protect Caterpillar's interests. By defending against those claims or just protecting interests? We have a case directly on point, Your Honor, and it's Cincinnati v. Great American. It is an Illinois Supreme Court case, and the carrier in that case said, I got notice but the insurer didn't ask me to do anything. And what the Supreme Court said is actual notice is enough. The carrier then must come back, and if they have questions about what the insurer is asking them to do, they should ask. Do you want us to defend? Do you want us to defend in part? Do you want us to defend now? Do you want us to defend later? Whatever questions they might have. So our notices are compliant with Cincinnati v. Great American, and then it's on Wausau to come back and raise any issues if they have any. Wausau's policy was a short period of time, 81 to 83, wasn't it? 81 to 85. 85, a really narrow window that Wausau and Caterpillar were linked with an insurance contract. Four contracts, yes. Any of the claims that you sent notification of, did they exceed those boundaries of 81 to 85? We gave notice to Century, which is the prior carrier, and to Wausau, which was the carrier in the 81 to 85 period. And our suit in this case was originally against both carriers, and we've now settled with Century and the case continues against Wausau. Why did you wait four years after Caterpillar was dismissed out to file this declaratory action? If memory serves, Your Honor, I think it's because there was ongoing other coverage litigation at the time. With other companies. With other companies, and I don't know what the priorities were in the litigation department at that particular point. So if Wausau wasn't a priority, why aren't you contributing to some of this delay from 2007 to 2011? I think it's a question, Your Honor, of what legal theory we're talking about. And in this case, on this appeal, there are two legal theories at issue. One is waiver. That looks at the conduct of the party who's in Wausau. And then the other doctrine that's up on appeal is the statute of limitations. And again, it's the party who's bringing the claim here, the motion to compel arbitration, to look at their conduct. If they want to look at our conduct, there are other legal doctrines that could have been brought. Equitable tolling, for example. But that's not an issue in this appeal. Well, the charge is that neither side aggressively pursued this litigation. Right. Isn't that one of the judge's statements? That is one of the judge's statements. But the legal standard... Is that a fair estimation? Well... Neither side really aggressively pursued the litigation? It depends on what your goal is. I mean, we're not an insurance company. We're a heavy equipment manufacturer, right? So our goal is to get paid for claims under insurance policies and put that away. So in this time period, we had a mediation with Century that lasted several months. We had a litigation. They went off and filed a case in the District of Illinois on the same topic. We had a mediation with Wausau that lasted many months. So it's not like we're just simply sitting there doing nothing. There's a lot going on in these cases at a particular point in time. But the judge's comment is interesting because it sort of hits two things, right? On the one hand, she correctly puts forth the legal standard that when you look at wavering, you look at whether the party acted inconsistent with their right or intent to arbitrate. And then she morphs the question to what both parties did. And my point is, it should have been focused on Wausau. Isn't there some case law that says when both parties are to blame for the delay then you really can't assign wavering to one party over the other? Well, I don't know of a particular case that says that, Your Honor. Okay. But there's another way to look at that question, even assuming there is a case like that. Because there's a 12-year delay here from 1999 when the settlement is inked, the 1999 settlement agreement, until Wausau first raises their defense that the 1999 agreement applies. So for that 12-year period. Well, let's wait, though. I don't know that the clock should be set at 99 because you filed your complaint in 2007 and the answer was in just a few weeks raised the 1999 agreement and included it in some affirmative defenses. So why should we attribute delay to Wausau going back to 1999? Because waver looks not simply at the contract. It also looks at a party's conduct. So whenever they are, say, in 2011, we acted promptly under the contract, the 99 settlement agreement. And my point is, under waver, you look beyond the contract to a party's conduct. And we have an insurance company literally getting thousands of claims since 1999. They should have said something or did something. That doesn't go to our delay. That goes to their delay because we're supposed to go under the contract, which is give them notice of the cases. And we did that. They are utterly silent from 99 to 2011. So even if you want to focus on the aggressiveness of the party in litigation, that's all pre-litigation. And all of that is inconsistent with seeking arbitration. When was the first inconsistent act after 99? I would submit to you, Your Honor, that it's the day after. How would that be? If you've just paid millions of dollars, as they did in the settlement agreement, $6 million, I believe, millions of dollars to settle an environmental claim, and you, as part of the consideration, get a release, that you believe broadly applies because it has a definition of environmental claim that you think is broad, you should the very next day say, you know, I've got this backlog or I'm continuing to get these cases. We're not covering those. You have to communicate. That's what Cincinnati v. Great American says. And in the Illinois improper claim handling statute, it also talks about communicating quickly and in response to claims communications. And here Walsall failed to do that because he just didn't respond for that entire period of time. Well, back to the judge's comment about how aggressively pursuing the litigation, what did Caterpillar do during this period of inactivity? Well, what Caterpillar did was narrow the case. Caterpillar went off and settled with one of the two parties and narrowed the case. Every dollar that we received in settlement is going to inure to the benefit of the remaining party in collecting defense costs. So we were at the work of resolving the case. There is no discussion in the trial court's opinion of the statute of limitations. The statute of limitations, by agreement, the parties negotiated to a two-year statute of limitations. And Section 7.4 of the 1999 Settlement Agreement talks about any and all disputes under this agreement shall be subject to a limitations period of two years from the date in which the dispute arose. So what does that tell us? Although the trial judge did state that they were mindful of Caterpillar's position on the statute of limitations, didn't they? Mindful, but what did that mean? It's not another sentence. Then the trial judge goes on to talk about the power of arbitration, Illinois' position on arbitration. I understand that. But there's an acknowledgment about the statute of limitations. There's no question. It's not like it's not mentioned. It's only forgotten. Absolutely right. The judge was mindful of it, but I don't think that gives us guidance going forward as to what the basis for the ruling is. Because what we had argued below and we argue here is for a statute of limitations, you need two things. You need an approval and you need a cutoff date. What do you think the approval date is? I think the agreement speaks to that. And it says the date upon which the dispute arose. What date do you think that is? We think that's April 2011 at the latest. That's the date you filed that complaint? We filed it, I think, a little before that. March? Yeah. So do you think the dispute arose when they answered the complaint in April? There's a letter that they wrote that cites the dispute resolution provision, and I think that conforms with the language of the agreement. So we think that is the beginning of the two-year limitations period. They point to our complaint. I'm just thinking about litigation. If you get a complaint not filed just before the statute of limitations runs, you're okay. Right. But is there a window in this agreement that says the meeting, mediation, and arbitration has to be completed in the two-year window? No, nothing says it has to be completed. But I'm drawing an analogy to exactly what you're saying, which is if you look at a normal case, a breach contract case, there's a breach, which is an accrual. It's a period of time by statute in which you have to file the case. You don't have to complete it. You have to file it. And what do you have to do? It has to be a complaint because that complaint has the capacity to resolve the dispute. It can't be a mediation. It can't be an argument. It has to be a complaint. So what in this agreement gives us the ability to resolve it? It's not a mediation. It's the arbitration. But arbitration is the third step. First you have to have a meeting, which did take place in July. That's correct. July 15th. In 2015. And then after the meeting, WASA, I could have the years, but the record speaks for itself. Then WASA set up mediation with James, and everything stalled at that point. Right. So they were complying, and I think if I recall correctly, it was Cannafiller that said, Ah, we need a few more documents. We're not sure at this point whether we have a dispute in your letter, and we'll get back to you is what the letter said. Right. But I think they characterized our letter as a refusal to mediate. And our letter was not a refusal to mediate. If you read the entire letter, it first says we don't think this applies. It then says we have concerns about the timeliness of this action. And then it talks about additional documents we've been waiting for, and says as soon as we get them, we will come back to you with a position on the mediation. We never got those documents. Did you ever get back to them? We didn't have a follow-up communication. The last part of the letter also talks about we're concerned about this communication coming from Minneapolis, Minnesota, where the agreement says it has to come from Chicago, Illinois, etc. Not a huge point, but indicating that we weren't saying no. We're trying to work through this. So that's a year. That letter's a year before the limitation of purity expires. And what did they do? That's the party who has to do something before the limitation of purity expires. What did they do? They did nothing. They didn't file a motion to stay. It was never brought to the court. But it was filed. It was filed, correct. Two minutes, please. They could have written back to provide the documents. They could have written back and said, never mind documents. We need your position right away on this mediation. They could have gone to court, as they ultimately did, and moved to compel arbitration without a mediation. They went ahead and moved that. That's why we're here. It's because by 2015, they only decided, oh, heck, we're going to go and file for arbitration. And they did so. Why didn't they do that in 2012? Or any point between 2011 and 2013? Because they were talking to you. They were communicating with you. There were no oral communications about this topic. I don't mean oral communications. There was a paper, and it just sat there, with the judge's comment about aggressive litigation. Well, the point is, like any limitations argument that this panel made for you, if a party has an obligation to file within two years, they have to do so. Look what Century did. Century raised the same sort of argument. And they did two things. They raised and got a tolling agreement with Caterpillar. That's in the record. And then, when they weren't satisfied with our discussions during the tolling agreement, they went off to the North District of Illinois, and they filed a second action to enforce our arbitration rights. That's in stark contrast to what Walsall did here. They simply said, hey, we'll stay quiet, and hopefully we'll get the benefit of that. And where we are now is we're 19 years down the road, and we're going to have to go arbitrate under the scope of a release, which we believe is prejudicial because we've spent both attorney's fees and it's going to be lost time in evidence during that time. There is law for the proposition that prejudice is inferred when there's a long delay. That's the goal of the case. Well, what would be the first question the arbitrator would have to ask if it was pushed to arbitration? What's the first question in this? I don't know what the first question is. I assume the first question is, you know, how did you get here? Should you be here? When would that be the first question for the arbitrator? Well, I mean, there are cases that we've cited that decide waiver, including the Northeast Regional case, and it says it's up to, because in that case, the parties say, leave this all for the arbitrator. And the court, the appellate court said no. The issue of waiver of arbitration is for the court or is in the discretion of the court. I think I'm making my time for about a minute. Do you have a question? I just have a couple of questions based on the timeline. Warsaw filed their first motion to stay on March 30th of 2012. And so there was approximately a year left until April 27th of 2013 when the statute, not statute, the period of limitations would get passed. From March 30th of 2012 until April 27th of 2013, they didn't set their motion to stay for hearing. But you didn't call it up either. That's correct. So why not? Well, just— Were you waiting until the limitations period ran? I mean, is it possible that you were both involved in a stalemate, a timed stalemate? Well, I think I'm not in the habit of noticing up my adversaries' motions. Well, if you don't want the litigation to be stayed, you need to notice it up and have the judge deny it. Well, it was unclear that they—look at what happened here. They didn't file a brief with that. And they didn't—actually, what they did is they made a motion to stay and also to complete the brief process. And there was no brief. I agree. No brief. They hadn't moved ever to written demand for arbitration. So it was unclear whether they were going to ever pursue this. Don't forget, they had—if you look at my letter, we talked about it earlier, about mediation. We raised the fact that they had told the court that they were going to move. And we hadn't seen it yet. So it may be that they were going to try to negotiate this away, that they were going to walk away. I don't know what they were planning. But we didn't see it as our burden to go and enforce a right under an agreement that we don't think applies. Okay. Why isn't—and I want—I'm confused. Why isn't the motion to stay in litigation pending mediation? When that's unopposed—you didn't file an objection to that. If it's unopposed, doesn't it communicate to the court that, don't bother us, we'll come back to you, we're working on this? In theory, my experience is that the way things are done is that you— every party follows a motion. First, I mean, we should call up the adversary and say, let's get a hearing date so it works for the court, and let's work out a briefing schedule. That's happened every single time I've had a motion in 10-plus years. That didn't happen here. There was no effort to work up a briefing schedule or ask the court for a hearing date. So if you give them— There's no running date. No running date. That's right. But you did file an objection to the motion to stay for purposes of arbitration. We did, because we had a conversation, and we set up a briefing schedule. We said, okay, it's time. You file this motion again. So essentially, they de facto withdrew the first one. When did that conversation take place? It would have been in 2015, after they filed. Okay. So there's a nine-month window between filing the motion to stay in litigation pending arbitration and Wausau's memo, and you're saying you were communicating with them in that period of time? In 2015? Yes. Yes. When they filed it, we then said, we'll file ours. I think there's only a relatively short gap in our response, maybe a couple of months, maybe two months or something like that. Less than that. Okay. We were efficient in those days. So we quickly filed, and then I'm going to be candid with the court. I think we said to them, you could have what you need for a reply. So there's a longer gap for a reply, and I think in part there was at that point a mediation going on from the parties. Oh, a mediation? Yes. Based on the 1999 agreement? Really? I'm not seeing it in the records. It's not in the records, Your Honor.  Okay. So between February 22, 2016, one month after you get the memo, you file your memo in opposition, and you're saying that mediation started? After that. I'm not sure of the dates. Okay. Because you're assigning the 22 months of delay from your objection to the hearing on January 18th of 2018 as inconsistent delay that's inconsistent with WASA's right to mediate. So are you backing off of that position? No, because there wasn't an agreement not to have that heard. You're saying you were mediating. We were, in fact, mediating. I'm just giving you a factual presentation. I appreciate that very much. But was there a discussion? Hey, let's not worry about the speed-to-speed resolution thing? No, nothing like that. Okay. So you're trying to work it out, and then if you get it worked out, then all this would be moved. So it isn't worked out while you're communicating. Right. And then on January 18th, there's a hearing on the renewed motion to stay. Right. And that's when you lose. The judge says everybody's been sluggish here. Right. Okay. So do you think the 22 months between the time you filed your memo in opposition until January 18th, 2018, when there was this hearing on WASA's renewed motion to stay, the arbitration, do you think that is delay that's inconsistent with WASA's rights under the 99 agreement? I don't know if I can parse to a particular month period like that. Okay. Generalities. My point is this. You have a 12-year delay to begin right before 99 to 2011, before we filed the complaint. I talked about that. I understand that you're pointing to that. And then from 2011 going forward to 2018, there's a seven-month gap between when they actually file a motion and ask the court to decide it. How can that possibly be consistent with what parties actively seeking arbitration and the right to compel arbitration? If they are seeking it because they say they're entitled to it under an agreement, they ought to do something more than wait seven years to bring it to a judge. Okay. I think I understand your argument. Thank you for indulging my question. Thank you. Mr. I don't know how you pronounce your last name. It's Kahl. Kahl. Yes, ma'am. Thank you. It may have pleased the court. My name is Eric Kahn. I'm here on behalf of WASA. And the dialogue you've been having with counsel has, I think, kind of really gotten to the nub of the dispute here. The court did say both parties were not aggressive in pursuing the litigation and arbitration rights. Can I bring you to my first question for you? Yes, ma'am. In 1999, you enter into a settlement agreement that you say applies here. You continue to get notices of all these suits. Do you think you had any duty to say, please quit sending these things to us? This has all been already resolved. Your Honor, I am not sure if this was a situation where the right hand didn't know what the situation was at the time. What I do know is at the time that Caterpillar was sending notices of the claims, but it wasn't, in fact, asking for anything more than a general protect our interests. WASA and Caterpillar, as you heard counsel say. Do you think that's sufficient against your opposing counsel? No, Your Honor. I don't think it is, especially in light of our relationship. We have got, as counsel pointed out, a decade-long relationship where we have been engaged in coverage disputes. Oftentimes, Caterpillar would send notices but wouldn't want us to defend. They never said so expressly. They always used the same form letters. For example, in the asbestos litigation that went on from 2003 until 2016, both Century and WASA were the insurers involved in the litigation. Caterpillar was only litigating against Century and, in fact, didn't want WASA to pay, apparently. And now that we have started paying at the request of Century and contributing to those payments, Caterpillar just recently sued us saying in breach of our contracts because we're now starting to pay those claims. So all along, we've gotten these generic, these form notice letters, but it's never been entirely clear but what we do know is that the first time they actually made an express demand for any money was when they filed suit on April 6, 2011. What did these form letters say? The form letters enclosed, here are some complaints, and they would send them. This was sent on behalf of their broker. Aon was their broker, as I understand it. My point is the form letter said, do something for us, right? It said to all the insurers, protect our interests. Right. Yeah. So there was a request in the form letter? There was a request to protect our interests. There was never any demand for defense. And, in fact, as the record has borne out, Caterpillar was defending itself. It didn't actually have Century defending these claims. It didn't have WASA defending these claims. It was defending itself. And at any point, had it actually wanted a defense from one of those insurers, presumably it would have actually made that direct ask or it would have actually filed litigation, which it has done. Now, they filed their suit in 2011, four years after they settled, nine, eight years after it was sent into the multidistrict litigation for litigation. In insurance language, what does it mean, protect our interests? That's a great question, Your Honor. I think what it does mean is, yes, the insurer is on notice and has a duty to investigate. And in WASA's response, WASA would always reserve its rights in response to those letters and say, we need to investigate because what you have given us is not enough to know if we have any due to enter our policies or otherwise. And, again, I don't know exactly what was going on at the company at that time and why it wasn't necessarily the situation where the settlement agreement was raised in response. How long do you get to investigate? I'm not sure what the rule is, Your Honor, under Illinois law and how long you get to investigate, but I do know that we were in dialogue requesting information from Caterpillar in those communications. We were requesting information about what products were at issue. And you sent letters in response to those letters? Yes. And investigate? Yes. When did the investigation stop? I don't know that it ever did, Your Honor. I don't know. This is a part of – there's a hole in the current record because we never got to this place in the litigation. Discovery didn't get started. Actually, I take that back. Caterpillar did serve Discovery in 2011, but then it stopped there. Are you still investigating? I believe we are, actually, yes. I think, though, that the world of knowledge about the case is closed. Actually, I take that back, Your Honor. I don't think we are still investigating. I think we have had enough information to deny coverage for the claims, and that's the litigation. I wasn't intending to ask you to ask a trick question. No, no, and I didn't take it that way, Your Honor. But I do think that both sides have not aggressively pursued this litigation, as the Court recognized below. And the Kostakis Court is the one that took that into account when deciding whether or not waiver occurred. They looked at both sides. Both sides had not been aggressive in pursuing litigation there, and the Court ultimately ruled that there was no waiver. And that citation is 142 Gillap, 3rd, 573. Thank you for reading that into the record. We often listen to the oral arguments again. Okay. So thank you. And the jump site just is 537, I believe. And it says, Thus, both parties contributed to the delays, and we cannot say as a matter of law that the trial court abused its discretion in finding that the delay caused by defendants did not constitute a waiver of the right to arbitrate. I would like to go back and address an answer that Mr. Reedy gave you as to what Katterkiller was doing in this time frame. He said that he was off resolving the litigation. Well, he was resolving the litigation of the century, leaving Wausau hanging out there with no litigation going on with Wausau. There was absolutely no effort. When was the settlement of the century? Do you know off the top of your head what year? Yes. I believe the century settlement was 2016. I believe actually that the dismissal took place in April of 2016. So from 2011 to 2016, they've got a lot of irons in the fire. Yes. This lawsuit is pending, this declaratory action is pending, and also they're working to settle the century. Yes. All right. But they're not litigating with us. They're not doing anything, and we're not litigating directly with them other than to assert our rights under the dispute resolution clause. And that's the only step that we ever took was to try to enforce those rights. We did, when we weren't facing direct indication that they were going to pursue litigation against us, we did not push as hard on our arbitration rights. But that was simply a matter of recognizing that they might actually get all the money from century. And it would not necessarily be to our benefit to aggressively pursue the litigation to enforce a right that they actually should have agreed to in the first place. Can I back you up? Yes. Would you please help me understand this complex litigation? I just want to make sure I understand both of your positions. On April 6th, 2011, is it true you both agreed that that's when the dispute arose, when the declaratory complaint got filed and says there is a controversy, actual controversy? That's what Wausau says. I believe that Caterpillar's position is that the dispute actually arose on the date that Wausau sent the letter initiating the three-step process. Okay, a little bit later. Correct. So sometime April of 11, and you were both agreeing that's when the dispute arose. Yes. So there is no disagreement over whether there's a dispute. The only dispute that arises is whether the 1999 agreement applies. Am I correct? That's the disagreement, the dispute under the 1999 settlement agreement. However, that's an issue that is reserved for the arbitrator. Well, so you have a dispute over whether the 1999 agreement applies. And the 1999 agreement says even if you're disputing whether this agreement covers it, you have to mediate and arbitrate. Yes. So is that your position? Am I adequately reciting your position? Yes. Yes. I have a question about that. Are there any parameters or limitations upon making a claim that this is a dispute to which that agreement covers? I mean, there are three types of, there's environmental, asbestos, and the welding teams. And you talked about, you know, these asbestos cases were going on and, you know, your company really wasn't involved even though you were an insurer and you may have had some liability. I mean, why is it that you would recognize that those things aren't going to be covered under this 99 agreement? Why would you assume that the welding teams would be covered by the 99 environmental case? Because we look at the definitions in the agreement, the settlement agreement from 1999, and to not go too far down into the weeds, there's an agreement that says that environmental claims are released. And there's a specific definition of environmental claims that includes claims for bodily injury arising out of the release of fumes that are pollutants and other things, whether that's into the outside air or into the indoor air. And there's, I forget exactly the phrase in the definition, but it ties it to substances that are regulated or governed by federal law. Manganese is one of those. And so these claims fit the technical definition of the claims that were released under the 1999 agreement. So again, as you're getting documents and acknowledgement, you're getting the notices from Caterpillar from 1999 to 2005? I think the settlement was 2007, and I'm sorry, I don't remember that. So you get those, and then you say, well, we sent a letter back investigating them. Well, remember that the two-year rule wouldn't apply to those? Now that we've got it, now that we have it, we're going to investigate. There is no... I don't think so, because there wasn't a dispute at the time. We were investigating, but there was no push on Caterpillar's part. There was no request on Caterpillar's part for payment. And under the terms of the agreement, if it did apply, the insurance relationship between Wausau and Caterpillar as to those claims was extinguished. We had no rights at all or no obligations under the policy at all. And so we actually had no obligation. If the agreement applies to those claims, we had no obligation to even respond, as an insurer would, because there was no insurance relationship anymore under the terms of the discharge and release under that agreement. Until we got a suit saying, or a direct demand saying, you owe us money, pay up now, there was no dispute. We had notice of some claims that they were litigating, but we didn't know anything further that they wanted us to do anything with those claims. Other than to protect their interests. And those were the early years. That was the early years of the notice letters. I don't know what the later years, I don't know how long those notice letters continued. That's a part of the record that was never developed during the run up to this appeal. So there might be something in those letters that explains it. There actually could be a possibility that it was raised. I don't know. I don't want to state that it is. We don't know. There was another company involved in all this, right? Another insurance company, yes. And lately, how does that play into the arguments regarding waiver and the other arguments in this case? That out there in the ether was Centria. I don't know that it plays in directly to this. What I do note and what's interesting is that Centria also had a settlement agreement with Caterpillar arising out of the environmental claims. After WASOP asserted its rights under its settlement agreement to have a dispute resolution process, Centria did the same thing. But they didn't have a dispute resolution process. They had a forum selection clause that said they had to file suit in the Northern District of Illinois. They went when they informed Caterpillar about this. It's my understanding that at that point, whatever Centria wanted to do under that settlement agreement, Caterpillar refused, and hence they ended up in the litigation. Regardless, they went on to a separate track under their agreement, and the litigation was then just – there was nothing happening in the litigation of EURIA at that time. Two minutes, please. Thank you. Does the fact that there are other companies out there that said that have any impact one way or the other on this case? I think it does to the degree that just like with the asbestos claims where Caterpillar was only focusing its efforts to get money from Centria, that's what it looked like to WASA here, was that Caterpillar was only going after Centria for money. And so that, to the extent WASA wasn't aggressively pursuing its arbitration rights, it's because it viewed there was a likelihood that it would collect all of its money that it needed to cover the defense costs. I guess I'm asking the question because briefly I'm asking when you started with EURIA, you gave reference to this, you know, there's this other thing going along, and so you thought they were doing something with the other company. There is. There's a history in both cases, in both the asbestos cases and in the well-infused cases, Caterpillar's M.O. is to pursue Centria first for recovery of the insurance proceeds under those policies before going after us, before going after WASA. And, in fact, they never got to that point with WASA and the asbestos claims, and they only did here after they settled with Centria in 2016. That's the only time they turned with Centria. Does that have any impact on them? I mean, their other action have any impact on them? Could that be some kind of legal defense? It goes to prejudice. It goes to prejudice, I think, in part. The fact that they were not pursuing litigation against us, nothing that, you know, WASA's delay in pursuing its arbitration by filing a motion did not prejudice Caterpillar in any way. There was no additional hearings they had to attend. There was no additional discovery they had to attend. The only thing that they can probably point to is the delay itself, but without prejudice, I don't think the delay gets them to waiver. They have offered no evidence that there's any missing exhibits, that there's witnesses who are no longer available, just because of the mere passage of time. And I don't want to let it go by that that delay is also because of them refusing all along to participate in the dispute resolution process they agreed to in 1999. I think my time is probably up, and so I would just ask that the Court affirm the decision of the trial court and order Caterpillar to honor its dispute resolution clause that it agreed to in 1999. I'm sorry. No, that's okay. I want to make sure I have standard of review clear in my mind. What do you think it is? I think there's a two-step analysis there. I think if the trial court made factual findings in support of its ruling, I think those are subject to an abuse of discretion. And I do think there are four findings, I think, two of them are related, but I do think that the statement that neither party aggressively pursued litigation, that's a factual finding that the trial court was uniquely situated to make because the trial court was observing all the litigation. On waiver? On waiver, yes. So you think we review waiver based on abuse of discretion because the trial court made factual findings? I think the finding of those factual statements, I think, is those should be measured with an abuse of discretion. And I think the findings that neither party will be prejudiced by being ordered into the dispute resolution clause also is a finding that was contested that the court should have looked at with an abuse of discretion standard. The law that's applied and whether Walsall acted inconsistently, I think that's all stuff that the court can look at de novo because that didn't get to a factual finding made by the trial court. Well, it's our decision on review. It was the decision for the trial court to make whether there was a waiver. I think both sides agree on that. Yes. Now, one of the arguments is the statute, the limitations period has not been complied with. Two years came and went after the dispute arose in April of 2011. That is not a dispute that the trial court resolves. Wouldn't that be a dispute that goes to mediation? I think the trial court did resolve the statute of limitations, the contractual limitations, by acknowledging that it was aware of it and then ruling in favor of Walsall because if that contractual limitations period wasn't satisfied, then the motion should not have been granted. So I think by extension, the court had to implicitly be saying, I'm not buying the argument under the contractual limitations. You started by saying there's two levels of review, and I interrupted. You got through a piece of discretion. Where do you think the other level of review is? On areas where the facts are undisputed and there was no factual finding made by the court, I think that's a de novo standard of review. The hearing in this case, there really wasn't evidence presented, correct? Correct. The evidence was entered on affidavits. How important is the de novo review? Because I think that the court made factual findings based on the undisputed evidence. I think that the finding that neither party aggressively pursued the litigation and the finding that neither party will be prejudiced, I think those are findings that should rise to the level of a piece of discretion, even though there wasn't a hearing where evidence was presented other than the affidavits. Thank you. I'm going to answer your second. Same question. Thank you, Your Honor. Thank you, Mr. Paul. Mr. Reedy. Thank you. Thanks for the preview, Your Honor. The standard of review, I think, is de novo. We cite the Watkins v. Mellon case from 2016 from this court, M-E-L-L-E-N. And I point to that case because the cases that Mr. Call cites in his brief are prior to 2016, and they are from different districts. I think that the Your Honor question hit the key question, which is there was no evidentiary hearing in the trial court. That's not disputed. What Judge Gorman did was she took – each party did a chronology of charts. She did a timeline analysis. She melded them, right? She didn't go through and agree or disagree with anyone's recitation of facts. She just melded them together, and it went from there. It was very helpful. It was very helpful. There are a lot of facts going on here. But none of them seem to drive the decision. I think the decision are legal decisions based upon what she perceived as unspecified facts. What about the limitations period? That seems to me to be a dispute that is something that should be resolved in mediation and arbitration. Do you disagree? I think it should be decided by the court. I think Judge Gorman should have decided it, and I don't think she did, and I think that it should have been reviewed. I think we have two cases that talk about it, with the Ryan case, R-E-I-N, and the Buccolo case, B-U-C-A-L-L-O, cases cited in our papers that essentially say strict compliance with the dispute resolution provision is necessary before the limitations period expires. And in each one of those cases, there was sort of a rough effort to comply. The provisions provided there had to be a letter, and there had to be a specification for mediator, and instead we had letters that didn't do that, and the court said that's not enough. Thank you for your answers. Go ahead. Thank you. You know, you always learn something new in an argument for the first time, and today's lesson is there was an investigation going on by Walsall. You know, I've been asking for those letters since my letter about mediation. I said, give us those letters about the investigation you're conducting. They've never arrived. They've never arrived. We're in 2019. Walsall's relying upon a record of investigation, and there's not a single reservation of rights letter in the record. There's not a single document indicating anything to communicate with Caterpillar between 1999 and 2011. Walsall cannot come to court in 2019 and say, well, we were doing an investigation in that 12 years. Not after they wouldn't give us the documents in 2011, and not when they don't produce in the trial court and they don't put it in the appellate record. But when they didn't produce the documents you requested, you didn't do a motion to compel in the trial court either. It wasn't discovery, I know. It wasn't discovery. But you still didn't take that issue to the court. We thought they were coming. We said, in response to Jantz, we said, we've asked for documents. When we get them, we're going to review them. Well, how long can your assumption last? You assumed they were coming. They never came. Right. And we said, we'll get back to you on mediation when we get the documents. So I think the burden is with the party who is facing a limitations period. And here that was Wausau, because they had a two-year period to do something. Yandel is a case I want to make sure I call the court's attention, because your Honor's question earlier when I was up before was about the filing of motions. And did that do anything? That's a case, Yandel, and I may be saying that wrong, but Y-A-N-D-E-L-L, where the party actually filed a motion to compel arbitration, and the court still filed a waiver because they said there wasn't compliance with the steps in the process. There wasn't a written demand for arbitration. Well, in this agreement, there's a requirement for a written demand for arbitration, and that has never been done. Correct, but the first two steps were in that there was a meeting and there was an attempt at mediation that didn't come to a conclusion. Right. And the question is, who bears the burden of that mediation not taking place? That's a distinguishing factor to the case that you cited. Correct. Correct. So I also want to address the issue of this is a remarkable thing to me for somebody who practices in the world of insurance law to hear an insurance company say, we didn't know what to do when we got your notices. We weren't sure what to do. The contract only makes Caterpillar provide a notice. It doesn't ask them to give magic words, ask them to do things, interpret the contract for them. Their job is to respond to the complaint and all their obligations under the contract, which include the obligation to reimburse defense costs in this case. One minute, please. How does the actions relate or not relate with regard to the dissentry of the other company over the time period? How does that impact this litigation? Yeah, I think it depends. How does it all? I think there are two legal issues on appeal. One is waiver, and that focuses solely on their conduct. And the second is statute of limitations. Do they meet it? Again, it focuses on their conduct. They've tried to throw us into the briar patch by saying, well, you aren't doing what you should have done. And where it informs the discussion is we weren't simply idly laying there. We were actually trying to make a recovery, and the benefit of the recovery goes, of course, to Caterpillar, but it also goes to the benefit of Wausau because the amount received from them is going to be decreased by any potential settlement. And Wausau is saying, go ahead. Right. But they have a job. They have a job to do, which is to protect their interests. I couldn't come here under statute of limitations and say, you know, I was hoping to get better from that injury. That's why I didn't file a timely complaint. You have to file a complaint, or you have to get a tolling. You have to do something. They didn't do that. They didn't protect their interests. Are you looking at the starting date of April 6th, 2011, though? Is that the starting date for what they didn't do? My point is that there is a contraction of limitations, and the parties seem to agree that it's in the time frame of April 2011. And what did they do to protect their interests before April 2013? I don't understand why that's relevant. If the dispute arose in 2011, the two-year clock starts ticking, tell me why the dates from 1999 until that date are relevant. I don't understand. Oh, I'm sorry. It's relevant to the waiver argument. It's not relevant to the limitations argument. All right. So when you make the limitations argument, you're agreeing that there's a dispute because you're agreeing the start date is April 6th. Is that correct? I'm sorry. I'm assuming you didn't hear the first part. You are agreeing that there's a dispute, I believe. Your complaint says there's a controversy. So you're agreeing there's a dispute. Is that giving away the baby in order to argue the limitations period? By saying the dispute started in 2011, and now we're only going to look for the next two years to see if they did it. Put yourself in the time period of 2018 and Judge Goldman, because that's what we're looking at as a decision. And at that point in time, That's seven years. I understand. No, no. I was just going to go to the point that at that point in time, what we were telling the judge was here's our whole waiver argument, but in addition to that, they're in court, and they haven't protected the limitations period. So what we're asking her to do is simply say, okay, did they protect the limitations period when they finally noticed this motion in 2015? Okay. So the events of 1999 to 2011 have no relevance to the limitations period. Finally, I understand. Okay. Thank you. I need to call time. Thank you. Mr. Raymond. Well, you both did a wonderful job. It's that easy to get caught up in the questions. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we will say recess for tomorrow morning.